UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LESLIE REED** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-006** |
| **DARREL VANOY, WARDEN** | **SECTION "I"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.     Factual and Procedural Background

The petitioner, Leslie Reed ("Reed"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On December 19, 2013, Reed was indicted by a St. Charles Parish Grand Jury for the second degree murder of Jared Mealey.[3] Reed entered a plea of not guilty to the charge on January 7, 2014.[4]

The record reflects that, on the evening of May 29, 2012, Reed, who was nineteen (19) years old and known as "Rolla," and Keywine Bradford, who was sixteen (16) years old and known

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 5.

[3] St. Rec. Vol. 1 of 5, Indictment, 12/19/13; Grand Jury Return, 12/19/13; Grand Jury Return Transcript, 12/19/13.

[4] St. Rec. Vol. 1 of 5, Minute Entry, 1/7/14; Arraignment Transcript, 1/7/14.

as "Poppa," walked over to visit Anthony Randle, who was at his grandmother's house in the same neighborhood in St. Rose, Louisiana.[5] Reed, Bradford, Randle, and Mike McCray, who was Randle's cousin, talked for some time and "caught up" with each other. The group decided to walk to a party being held down the street. As they were walking down Turtle Creek Road, Jared Mealey, age nineteen (19), drove past them. As Mealey saw the group, he sped up which prompted Randle to comment that Mealey looked "scary," meaning afraid of them. Mealey had previously been part of the group, and he and Reed had been really good friends. However, there had been a problem between Mealey and Reed concerning drug use, and Mealey had not "hung out" with them for weeks.

After Mealey drove past them, Reed motioned for Bradford to follow him, while Randle and McCray walked on ahead. The two men walked towards the railroad tracks, in the opposite direction of Randle and McCray. They turned a corner, and Reed told Bradford that it was "the perfect time to commit the murder." Reed handed to Bradford a "nine millimeter" gun which Reed had purchased the previous night from Bradley Price. The gun had "Millennium" written on it. Before the two men got to Turtle Creek Road, Bradford handed the gun back to Reed because he "could not do it."

Reed then instructed Bradford to flag Mealey down and he complied. Bradford called out for Mealey saying "yo," and Mealey put the car in reverse and rolled down his window so that they could talk. Bradford knew when he flagged the car down that Mealey was going to be murdered, and he did it to show Reed his loyalty and to impress him.

---

[5]The facts are taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Reed*, 185 So.3d 206, 207-11 (La. App. 5th Cir. 2016); St. Rec. Vol. 4 of 5, 5th Cir. Opinion, 15-KA-550, pp. 2-8, 1/27/16.

2

Mealey did not look at Bradford as they spoke, which led Bradford to believe Mealey was on drugs. Mealey told Bradford that he was going to watch a sporting event, and he asked Bradford if he wanted to "smoke crack" and "get loaded," to which Bradford replied he did not "do crack." Bradford saw Reed in his peripheral vision as he walked-up to the car. As he backed up, Reed stood at the driver's side window and fired six shots into the car. Mealey's car was still in reverse and rolled back before it came to rest.

Afterwards, Reed and Bradford walked back the way they had come and caught up with Randle. When they arrived at the party, people questioned the sound of gunshots. Randle eventually saw police arrive in the neighborhood soon after he heard the shots. Reed and Bradford soon walked to the fence of Bradley Price's home and handed the gun to Price over the fence. While talking to Price, Reed said, "f*** Mealey," and "I smoked him," meaning he killed Mealey.

When Reed and Bradford walked home after this, they could see Mealey's headlights still shining down the street. Reed stopped in the middle of the road and said to Bradford, "look at my work," in reference to the headlights. The two then continued home.

During their investigation, the police took several statements from both Bradford and Reed, including at least one conversation at a memorial service for Mealey. Reed presented himself to the police to give another statement after someone shot at him with an AK-47 while he attended another memorial service for Mealey. Based in part on Reed's statements, police eventually arrested Bradford who was separately charged for his role in Mealey's murder.

Bradford from his cell wrote a statement to police implicating himself and Reed in the murder. He later attempted to retract the written statement claiming in other oral statements that Reed has committed the murder alone. Bradford eventually was tried as an adult and convicted of second degree murder. Before his sentencing, however, Bradford gave police another statement,

similar to his prior written statement, implicating himself and Reed in Mealey's murder. The state trial court granted Bradford's motion for new trial in the interest of justice, and Bradford pled guilty to an amended charge of manslaughter for which he would receive a sentence from ten (10) to twenty (20) years in return for his testimony at Reed's trial.

Reed was tried before a jury on April 21 through 23, 2015, and found guilty as charged.[6] At a May 19, 2015, hearing, the state trial court denied Reed's motions for new trial and post-verdict judgment of acquittal.[7] After waiver of legal delays, the state trial court sentenced Reed to life in prison without benefit of parole, probation, or suspension of sentence.[8]

On direct appeal, Reed's appointed counsel asserted that the state trial court erred when it allowed the jury to hear and read a portion of his August 2, 2012, statement during which a police officer referred to him as a "cancer eating away at Preston Hollow," which prejudiced the jury against him and caused them to believe Bradford's version of events.[9] He argued that this was tantamount to an inadmissible reference to other crimes or bad acts in violation of La. Code Ev. art. 404(B). On January 27, 2016, the Louisiana Fifth Circuit affirmed Reed's conviction and sentence finding the claim procedurally barred for lack of a contemporaneous objection and as otherwise meritless.[10]

---

[6] St. Rec. Vol. 1 of 5, Trial Minutes, 4/21/15; Trial Minutes, 4/22/15; Trial Minutes, 4/23/15; Jury Verdict, 4/23/15; St. Rec. Vol. 2 of 5, Trial Transcript, 4/21/15; St. Rec. Vol. 3 of 5, Trial Transcript, 4/22/15; St. Rec. Vol. 4 of 5, Trial Transcript, 4/23/15.

[7] St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/19/15; Minute Entry, 5/11/15; Motion for New Trial, 5/11/15; Motion for Post-Verdict Judgment of Acquittal, 5/11/15; Sentencing Transcript, 5/19/15.

[8] St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/19/15; St. Rec. Vol. 1 of 5, Sentencing Transcript, 5/19/15.

[9] *Reed*, 185 So.3d at 211; St. Rec. Vol. 4 of 5, 5th Cir. Opinion, 15-KA-550, pp. 8-9, 1/27/16. The State failed to provide the appellate briefs.

[10] *Id*. at 212; St. Rec. Vol. 4 of 5, 5th Cir. Opinion, 15-KA-550, pp. 9-10, 1/27/16.

On March 13, 2017, the Louisiana Supreme Court denied without stated reasons the writ application filed by Reed's counsel.[11]  Reed's conviction and sentence became final ninety (90) days later, on Monday, June 12, 2017,[12] because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Eight months later, on February 19, 2018, Reed signed and submitted to the state trial court an application for post-conviction relief asserting the following grounds for relief:[13] (1) prosecutorial misconduct occurred when the State solicited false testimony from Detective Bradley Walsh regarding the accuracy of Reed's transcribed statement taken June 6, 2012 and introduced a fabricated transcribed statement; and (2) he received ineffective assistance of counsel when counsel failed to object to the prosecution's elicited false testimony from Detective Walsh regarding the accuracy of Reed's June 6, 2012 and the State's use of a fabricated statement.  Reed also requested that the Court conduct an in camera review of the grand jury transcript and the prosecutor's file to search for claims for his to amend into his application.

After receiving a response from the district attorney, on May 2, 2018, the state trial court denied relief finding no merit in Reed's claims.[14]  On June 26, 2018, the Louisiana Fifth Circuit denied Reed's related writ application on the showing made, noting that Reed failed to provide

---

[11]*State v. Reed*, 216 So.3d 800 (La. 2017); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2016-KO-0359, 3/13/17; La. S. Ct. Letter, 2016-KO-359, 2/29/16.  The State failed to provide the Court with a copy of this writ application.

[12]The final day fell on Sunday, June 11, 2017, which caused the last day to fall on the next business day, Monday, June 12, 2017.  *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

[13]St. Rec. Vol. 3 of 12, Application for Post-Conviction Relief, dated 8/7/15.

[14]St. Rec. Vol. 5 of 5, Trial Court Order, 5/2/18; Trial Court Order, 2/23/18; St. Rec. Vol. 4 of 5, State's Answer, 3/2/18.

copies of his pleadings and the ruling for the Court to review.[15]  On September 24, 2019, the Louisiana Supreme Court also denied Reed's writ application without stated reasons.[16]

In the meantime, on September 25, 2018, while the Louisiana Supreme Court writ application was pending, Reed apparently submitted a motion to the state trial court seeking to withdraw the claims originally asserted and to supplement his original post-conviction application, although he failed to specify the claims.[17]  The state court record contains no copy of this pleading nor does it reflect a ruling on the motion.  However, according to the State's opposition response, on January 2, 2020, Reed filed a second state court application for post-conviction relief asserting that he was unconstitutionally convicted by a non-unanimous jury verdict.[18]  The state court record provided by the State contains no copy of this pleading.

## II.   Federal Petition

On January 13, 2020, after correction of certain deficiencies, the clerk of this Court filed Reed's federal petition for habeas corpus relief in which he asserts that his conviction was tainted by prosecutorial misconduct through overzealous police coercion practices used upon Bradford during his custodial interrogation which led to Bradford's perjurious trial testimony.[19]  While this is the only claim asserted, Reed's brief contains quotations from the state courts' rulings on appeal and post-conviction review, which are taken out of context and credited to the wrong state court.

---

[15]St. Rec. Vol. 5 of 5, 5th Cir. Order, 18-KH-317, 6/26/18.  The State failed to provide a copy of this writ application.

[16]*Stated ex rel. Reed v. Vannoy*, 279 So.3d 938 (La. 2019); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2018-KH-01244, 9/24/19; La. S. Ct. Letter, 2018-KH-1244, 7/19/18.  The State failed to provide a copy of this writ application.

[17]Rec. Doc. No. 5-3, pp. 112-13.  This document is not included in the state court record provided by the respondent nor is it listed on the state trial court's docket minutes.

[18]Rec. Doc. No. 11, p. 4.

[19]Rec. Doc. No. 5.

On February 21, 2020, the State filed a response in opposition to Reed's petition asserting that the petition was timely filed and that Reed failed to exhaust state court review of the prosecutorial misconduct claim asserted in this Court.[20] In the alternative, in response to the merits of the claim, the State "denies any and all such allegations" and "objects on the grounds of vagueness."[21]

### III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this Court no later than January 2, 2020.[23] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[20]Rec. Doc. No. 11.

[21]*Id*. at p. 5.

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Reed's original, deficient petition was received and filed by the Clerk of Court on January 2, 2020. The official stamp of the prison legal department indicates that the pleading was received from Reed and electronically mailed to this Court on January 2, 2020. Rec. Doc. No. 5-2, p. 1; Rec. Doc. No. 1-1, p.1. The fact that he later paid the filing fee does not alter application of the federal mailbox rule. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

As noted above, the State asserts that Reed failed to exhaust state court review of his claim. The record supports the State's conclusion, and Reed's petition should be dismissed without prejudice for this reason.

## IV. Exhaustion Doctrine

Broadly construing his arguments, Reed asserts that prosecutorial misconduct occurred when the stayed relief on the coerced confession and perjurious testimony of Bradford at trial to secure his conviction. Reed has not presented this claim to any state court. He, therefore, has not given the Louisiana courts the opportunity to address his claim before pursuing federal habeas corpus relief.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).

The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" to the highest state court in a procedurally proper manner. *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id*. (citing *Nobles*, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

To exhaust review of his claims in the state courts, Reed must have fairly presented the same claim and legal theories he urges in this federal court to each of the state courts through to the Louisiana Supreme Court in a procedurally proper manner. Reed simply has not done so. He has made no effort to exhaust review of this claim of prosecutorial misconduct on direct appeal or on post-conviction review. Reed's claim challenges the veracity of Bradford's statement to police and trial testimony. The prosecutorial misconduct claim presented in his 2016 state court post-conviction application argued that the State allowed a detective to misrepresent the content of his June 5, 2016 statement and use a false transcript in its place. The claims and arguments in this federal petition are not the same as those he brought before the state courts.

Reed, therefore, has denied the state courts the opportunity to review this prosecutorial misconduct claim. The record discloses no good cause for his failure to exhaust review of his claim, and there is none apparent from the record. Having shown no good cause for his failure to exhaust, this petition should be dismissed without prejudice to allow Reed to exhaust state court review of his claims should he choose to do so.

V.     **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Reed's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[24]

New Orleans, Louisiana, this  4th   day of August, 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[24]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.